UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MAMEA, | No. 2:19-cv-1082 KJN P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS AND RECOMMENDATIONS |
| V. THUNG, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a state prisoner, proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. Defendant Thung's motion for summary judgment is before the court.[1] As discussed below, defendant's motion should be granted.

II. Plaintiff's Allegations

In his verified complaint, plaintiff alleges the following. On November 22, 2017, plaintiff was returning from physical therapy in an ADA transport van. When plaintiff rolled his wheelchair to the ramp to exit, defendant Thung pushed the button to lower plaintiff's wheelchair. The wheelchair ramp malfunctioned, jerking uncontrollably, lifting the front of plaintiff's

---

[1] By order filed January 14, 2020, defendant Shelby was dismissed from this action without prejudice pursuant to plaintiff's voluntary request. (ECF No. 23.)

1  wheelchair, causing plaintiff and the wheelchair to slam three feet to the ground, catching
2  plaintiff's legs in between the wheelchair and the ramp.  (ECF No. 1 at 3.)  Plaintiff was unable to
3  return to his wheelchair due to injuries to his legs and back, and defendant had to place plaintiff
4  back in the wheelchair.  (Id.)  Defendant refused to allow plaintiff to see medical staff, despite
5  plaintiff's complaints of injuries, informing plaintiff he must complete a sick call slip.  Plaintiff
6  returned to his housing unit, and about thirty minutes later, defendant came and took plaintiff to
7  an E-clinic bathroom to complete an incident report.  Defendant went to contact a nurse to
8  document what had happened, but when plaintiff asked the nurse if plaintiff could get medical
9  treatment, the nurse informed plaintiff he would have to put in a sick call slip, and sent plaintiff
10 back to his housing unit.  Plaintiff seeks money damages and recovery of his costs of suit.

III. Undisputed Facts[2] ("UDF")

1. Plaintiff is an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") who was incarcerated at California Health Care Facility ("CHCF") in Stockton, California, at all times relevant to this lawsuit.  (ECF No. 1 at 2.)

2. Plaintiff's civil rights complaint was presented to prison staff for mailing on June 13, 2019, and alleges defendant Thung was deliberately indifferent to plaintiff's serious medical needs.  (ECF No. 1 at 2, 4.)

3. At all times relevant herein, defendant Thung was employed by CDCR as a correctional officer, and was assigned as a transportation officer at CHCF on November 22, 2017.  (ECF No. 1 at 2; 24-7 at 1 (Deft.'s Decl.).)

4. On November 22, 2017, plaintiff was exiting a transportation van onto a wheelchair ramp when plaintiff fell from his wheelchair, onto the floor of the van, with his right leg caught in between the van and the ramp.[3]  (ECF No. 29 at 157 at 169 (Pl.'s Dep. at 45).)  Plaintiff testified

---

[2] For purposes of summary judgment, the undersigned finds these facts are undisputed.  Where plaintiff has failed to properly address defendants' assertion of fact as required, the undersigned considers the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

[3] Plaintiff disputes the details surrounding his fall from the wheelchair, and argues that defendant caused plaintiff to fall.  (See, e.g., ECF No. 29 at 36 ("defendant "misapplied his training and malfunctioned the ADA lift.").  However, in this action plaintiff did not pursue an Eighth

2

that he "slid out," hitting his tailbone on the bottom of the van, "right on [his] butt, right around my lower back." (ECF No. 29 at 157-59 (Pl.'s Dep. at 45, 47-48).)

5. Plaintiff had to twist his right leg to free it from the gap between the van and the ramp. (ECF No. 24-7 at 1-2 (Deft.'s Decl.); ECF No. 29 at 158-59 (Pl.'s Dep. at 47-48).) The wheelchair remained in the van. (ECF No. 29-1 at 3.) After he freed his leg, plaintiff was able to get back into his wheelchair; defendant helped plaintiff adjust. (ECF No. 29 at 158-59 (Pl.'s Dep. at 47-48; 29-1 at 3.)

6. Plaintiff felt a sharp pain and said, "Dang, this kind of hurts right here" and "I'm feeling my back is hurting." (ECF No. 29 at 160 (Pl.'s Dep. at 49).)

7. At first, plaintiff felt only a sporadic, "little throb" of pain in his lower back and leg, but the pain worsened as days passed. (ECF No. 24-5 at 10 (Pl.'s Dep. at 54).)

8. Plaintiff remained conscious, was able to communicate, and was not bleeding. (ECF No. 24-7 at 2.)

9. Plaintiff exited the van on his own power,[4] dragging the folded wheelchair out the front door with him. (ECF No. 24-5 at 11-12 (Pl.'s Dep. at 57-58).)

10. After exiting the transport van, plaintiff got back in his wheelchair, and told defendant that plaintiff's back hurt "really bad. Can I go lay down?" (ECF No. 24-5 at 13 (Pl.'s Dep. at 61).) Defendant agreed to let plaintiff return to his cell. (Id.) Plaintiff returned to his housing unit on his own.

11. After reporting the incident to his supervisor, who inspected the van, defendant then went to find plaintiff, who was talking to another correctional officer at the podium of plaintiff's housing unit. (ECF No. 29 at 166 (Pl.'s Dep. at 64).) Defendant escorted plaintiff to the E-Yard

---

Amendment failure to protect claim against defendant, but rather alleges only that defendant was deliberately indifferent to plaintiff's serious medical needs by denying plaintiff access to medical treatment. (ECF No. 1 at 4.)

[4] Plaintiff testified he "hobbled" or "limped" off the van (ECF No. 24-5 at 12 (Pl.'s Dep. at 58); defendant declares that plaintiff walked off the van, and did not appear injured (ECF No. 24-7 at 2 (Deft.'s Decl. at 2). But it is undisputed that plaintiff exited the van under his own power.

1 medical clinic.[5] (ECF No. 24-3 at 2.) According to plaintiff's own account, the total delay, between the incident and the time plaintiff was evaluated by the LVN, did not exceed forty minutes.[6]

12. Plaintiff did not request medical attention from any other staff member between the time of the incident and when defendant brought plaintiff to the medical clinic. (ECF No. 24-5 at 13-14 (Pl.'s Dep. at 61-62).)

13. At the medical clinic, plaintiff was evaluated by an LVN who found plaintiff had no broken bones, no active bleeding, no bruising or discoloration, and no lacerations or abrasions. (ECF No. 24-5 at 17 (Pl.'s Dep. at 69); ECF No. 24-7 at 2-3 (Deft.'s Decl.), 5 (Ex A).) Plaintiff testified it was swollen on the side. (ECF No. 24-5 at 17 (Pl.'s Dep. at 69).)

14. Plaintiff had the same complaints of back and knee pain during the evaluation that he had immediately after his fall, and told the LVN that it hurt "a lot." (ECF No. 24-5 at 16 (Pl.'s Dep. at 66, 68).) The LVN noted plaintiff's complaints of pain, ranked 8/10. (ECF No. 24-7 at 5 (Ex A).) Plaintiff testified that the LVN told plaintiff that he had to put in a sick call slip to see a doctor. (ECF No. 24-5 at 17 (Pl.'s Dep. at 69).)

15. After he was medically evaluated and the LVN documented no injuries, plaintiff left the medical clinic; at that time, defendant observed that plaintiff "did not appear to be in any physical distress," and defendant had no other interaction with plaintiff regarding his medical care since that date. (ECF No. 24-7 at 3.)

////

---

[5] Plaintiff testified that defendant went to get plaintiff to file an incident report. (ECF No. 29 at 166 (Pl.'s Dep. at 64).) Defendant declares he went to find plaintiff to "bring him to the medical clinic for an evaluation." (ECF No. 24-7 at 2.) In any event, it is undisputed that once defendant located plaintiff, defendant escorted plaintiff to the medical clinic.

[6] Plaintiff testified that it was "not very long" before defendant came to get plaintiff, "10, 20 minutes, I don't know." (ECF No. 29 at 166 (Pl.'s Dep. at 64).) Defendant declared he found plaintiff about an hour after the incident. (ECF No. 24-7 at 2 (Deft. Decl.).) The medical report notes the incident occurred at 9:30, and plaintiff was seen by the LVN at 10:40. (ECF No. 24-7 at 5.) In his declaration, plaintiff declares that it was thirty minutes or less between the time of the incident and when defendant came to get plaintiff at his housing unit. (ECF No. 29-1 at 6.) In his opposition, plaintiff claims it was not a seventy-minute delay, but rather thirty to forty minutes. (ECF No. 29 at 31.)

16. After plaintiff returned to the housing unit, plaintiff submitted a request for health care services in which he wrote:

> I caught my leg in the transport van due to some kind of malfunction in the wheelchair lift. I didn't think that I re injured it because it was messed up already. But as I applied preasure (sic) to it & it throbbed a little more than usual and its hurting need to see doctor please."

(ECF No. 24-5 at 19 (Pl.'s Dep. at 74-75); ECF No. 24-5 at 20 (Ex. E).)[7]

Exhaustion of Administrative Remedies

17. The CDCR, which includes CHCF, has an administrative remedies process for grievances/appeals and had this process in place on November 22, 2017. (ECF No. 24-6 at 1-2 (Moseley Decl.); Cal. Code Regs., tit 15, §§ 3084-3084.9.)

18. To exhaust administrative appeals for a grievance/appeal, the CDCR's Office of Appeals must provide a substantive answer to that grievance/appeal at the third and final level of review. (ECF No. 24-6 at 1-2 (Moseley Decl.).)

19. A grievance/appeal is screened out and not answered substantively if it does not comply with the regulations governing the appeal process. Instead, the appeal is returned with a letter instructing the offender how to cure the deficiency, if a cure is possible. Administrative remedies are not exhausted for a grievance/appeal that has been screened out by the Office of Appeals ("OOA") and not answered substantively. (ECF No. 24-6 at 1-2 (Moseley Decl.).)

20. Plaintiff's grievance related to this case, log number CHCF-E-17-04367, was partially granted at the Second Level of Review on June 13, 2018, in an amended response, which specifically informed plaintiff that the decision did not exhaust the administrative remedy available to plaintiff within CDCR. (ECF No. 24-6 at 3 (Moseley Decl.), 8, 10, 20 (Ex. B); ECF No. 24-5 at 5 (Pl.'s Dep. at 17).)

////

---

[7] The sick call form is dated November 22, 2017, but does not indicate what time of day plaintiff completed the request. (ECF No. 24-5 at 20 (Ex. E).) In his opposition, plaintiff declares he submitted the sick call slip upon arriving back to his unit, not later that same day. (ECF No. 29-2 at 9.) However, because defendant is a correctional officer, and not medical staff, the timing of this sick call form is not material to the instant motion.

21. Grievance CHCF-E-17-04367 was rejected at the Third Level of Review. (ECF No. 24-6 at 6, 8, 10.) In a September 7, 2018 letter, the Chief of OOA explained that plaintiff should take the corrective action necessary and resubmit within the time frames specified in CCR 3084.6(a) and CCR 3084.8(b). (ECF No. 24-6 at 3 (Moseley Decl.), 7-8 (Ex. A, B).)

22. The Office of Appeals has no record of plaintiff resubmitting CHCF-E-17-04367 after the September 7, 2018, letter was issued. (ECF No. 24-6 at 4 (Moseley Decl.), 7 (Ex. A).)

23. Plaintiff's health care grievance CHCF HC 17000826 addressed the adequacy of medical care plaintiff received following the November 22, 2017 incident, but did not mention defendant Thung and did not allege that defendant Thung denied or delayed plaintiff medical care. (ECF No. 24-4 at 12-25 (Henderson Decl., Ex. C).)

24. Plaintiff's health care grievance CHCF HC 18001150 addressed medical care plaintiff received on January 10, 2018, but did not mention defendant Thung and did not allege that defendant Thung delayed or denied plaintiff medical care. (ECF No. 24-4 at 26-38 (Henderson Decl., Ex. D).)

25. Plaintiff's health care grievance CHCF HC 17000845, which was rejected at the institutional level on December 8, 2017, requested a copy of the incident report from the November 22, 2017 incident, but did not mention defendant Thung and did not allege that defendant Thung denied or delayed plaintiff medical care. (ECF No. 24-4 at 39-43 (Henderson Decl., Ex. E).)

IV. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1    Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P.
2    56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need
3    only prove that there is an absence of evidence to support the non-moving party's case."  Nursing
4    Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376,
5    387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 Advisory
6    Committee Notes to 2010 Amendments (recognizing that "a party who does not have the trial
7    burden of production may rely on a showing that a party who does have the trial burden cannot
8    produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment
9    should be entered, after adequate time for discovery and upon motion, against a party who fails to
10   make a showing sufficient to establish the existence of an element essential to that party's case,
11   and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.
12   "[A] complete failure of proof concerning an essential element of the nonmoving party's case
13   necessarily renders all other facts immaterial."  Id. at 323.

14          Consequently, if the moving party meets its initial responsibility, the burden then shifts to
15   the opposing party to establish that a genuine issue as to any material fact actually exists.  See
16   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
17   establish the existence of such a factual dispute, the opposing party may not rely upon the
18   allegations or denials of its pleadings, but is required to tender evidence of specific facts in the
19   form of affidavits, and/or admissible discovery material in support of its contention that such a
20   dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party
21   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
22   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
23   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
24   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return
25   a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436
26   (9th Cir. 1987).

27          In the endeavor to establish the existence of a factual dispute, the opposing party need not
28   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed June 24, 2020 (ECF No. 24-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

V. Eighth Amendment Medical Claim

    A. Legal Standard

The Eighth Amendment to the United States Constitution imposes on the states an obligation to provide for the basic human needs of prison inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Where a plaintiff claims there has been a failure to provide adequate medical care, and the failure violated the Eighth Amendment, to succeed plaintiff must demonstrate defendants acted with deliberate indifference to serious medical needs. Wilson v. Seiter, 501 U.S.

8

1  294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[D]eliberate indifference
2  to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain,
3  proscribed by the Eighth Amendment. This is true whether the indifference is manifested by
4  prison doctors in their response to the prisoner's need or by prison guards in intentionally denying
5  or delaying access to medical care or intentionally interfering with the treatment once
6  prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation
7  marks, and quotation marks omitted).

8       In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett v.
9  Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "First, the plaintiff must show a 'serious medical
10 need' by demonstrating that failure to treat a prisoner's condition could result in further
11 significant injury or the 'unnecessary and wanton infliction of pain.'" Id. "Second, the plaintiff
12 must show the defendant's response to the need was deliberately indifferent." Id. This second
13 prong is satisfied by showing "(a) purposeful act or failure to respond to a prisoner's pain or
14 possible medical need and (b) harm caused by the indifference." Id. "Deliberate indifference is a
15 high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).

16      A medical need is said to be "serious" for Eighth Amendment purposes "if the failure to
17 treat a prisoner's condition could result in further significant injury or the unnecessary and
18 wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled
19 on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997), (citation
20 omitted).

21      The subjective component focuses on the official's state of mind and requires a showing
22 of deliberate indifference. See Wilson, 501 U.S. at 299-304. A prison official is deliberately
23 indifferent only if the official "knows of and disregards an excessive risk to inmate health and
24 safety." Toguchi, 391 F.3d at 1057 (quoting Gibson v. Cnty. of Washoe, 290 F.3d 1175, 1187
25 (9th Cir. 2002) ) (internal quotation marks omitted). "[T]he official must both be aware of facts
26 from which the inference could be drawn that a substantial risk of serious harm exists, and he
27 must also draw the inference." Farmer, 511 U.S. at 837. Mere negligence in diagnosing or
28 treating a medical condition, without more, does not constitute deliberate indifference. See Hunt

9

v. Dental Dep't., 865 F.2d 198, 200 (9th Cir. 1989); see also Toguchi, 391 F.3d at 1058-60. In addition, mere differences of opinion between a prisoner and prison medical staff as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference may be shown where prison officials or practitioners "deny, delay, or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (finding that delays in providing medical care may show deliberate indifference). But mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment demonstrates deliberate indifference, the prisoner must show that the delay caused "significant harm and that defendants should have known this to be the case." Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Jett, 439 F.3d at 1096; see McGuckin, 974 F.2d at 1060. Where plaintiff suffers no harm as a result of a defendant's actions, plaintiff's Eighth Amendment claim fails. See White v. Kasawa, 2010 WL 986820, at *12 (N.D. Cal. Mar. 17, 2010) (White's Eighth Amendment claim fails because the delay caused him no harm.").

B. Discussion

Defendant has moved for summary judgment and met his initial burden to show the basis for his motion and identify the portions of the record he believes demonstrates the absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 323. Hence, the burden shifts to plaintiff to establish that a genuine issue of material fact actually exists. See Matsushita Elec. Indus. Co., 475 U.S. at 586. The undersigned has reviewed plaintiff's verified complaint, his opposition and supporting documents. Drawing all reasonable inferences from the evidence submitted in plaintiff's favor, the undersigned concludes that plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to his claim that defendant was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment.

////

Here, the undisputed evidence demonstrates that although plaintiff fell from his wheelchair in the transport van and his right leg became caught in the gap between the ramp and the van, plaintiff was able to remove his leg without assistance, and get back into his wheelchair. It is undisputed that plaintiff did not lose consciousness, did not hit his head, and was not bleeding. The wheelchair ramp was inoperable at that time. After a verbal exchange with defendant, plaintiff was able to exit the van on his own power, and brought the folded wheelchair out with him. "Plaintiff exited the transport vehicle dragging the wheelchair down the front steps," and then "wheeled himself back to [the housing] unit to lay down." (ECF No. 29-1 at 4 (Pl.'s Decl.).) These undisputed facts do not demonstrate an obvious risk such that the court may infer defendant's subjective awareness of a substantial risk of harm if defendant did not call for emergency medical treatment.

Plaintiff failed to adduce evidence demonstrating that plaintiff suffered life-threatening or emergent injuries requiring defendant to call for emergency medical services at the time plaintiff fell. Plaintiff declares that defendant witnessed the fall and plaintiff's facial winces of pain which demonstrated that the "injury was serious." (ECF No. 29-1 at 3, 4.) Plaintiff argues that because defendant assisted plaintiff back into the wheelchair, defendant "knew plaintiff was injured." (ECF No. 29 at 30.) But such observations, standing alone, are insufficient to meet the subjective requirement for deliberate indifference.

Plaintiff's undisputed statements concerning his pain at the time of the incident do not demonstrate that defendant was subjectively aware of an excessive risk of harm if plaintiff were not provided emergency medical care. Plaintiff now attempts to qualify or explain his deposition testimony (ECF No. 29-2 at 4), but fails to demonstrate that defendant was even aware that plaintiff was in "really bad" pain at the time of the incident. Indeed, plaintiff claims the pain was a throb at first, but then "worsened over the days." (ECF No. 29-2 at 4.) This is further confirmed by plaintiff's handwritten request for health care services, submitted after he saw LVN Shelby, in which plaintiff wrote that he did not think he reinjured it, but as he applied pressure, "it throbbed a little more than usual and its hurting." (UDF 16.)

////

11

Plaintiff declares that "any other law enforcement would of called immediately for medical attention because it could've been internal (which it was)." (ECF No. 29-2 at 12.) But plaintiff adduced no affidavit from a law enforcement officer, EMT, or other medical expert attesting to same, and provided no medical evidence so demonstrating. Plaintiff's lay opinion is insufficient.

Plaintiff also argues that due to his disabilities, evidenced by his green mobility impaired vest and cane, as well as his housing in the EOP unit, plaintiff was entitled to "immediate medical care," relying on Schmidt v. Odell, 64 F. Supp. 2d 1014, 1033 (D. Kan. 1999),[8] and Cal. Gov't Code § 845.6.[9] (ECF No. 29 at 31-32.) Such sources do not support plaintiff's broad proposition that all disabled prisoners are entitled to "immediate" medical care. Certainly, disabled prisoners are entitled to be treated with dignity. But plaintiff must adduce evidence demonstrating that under the circumstances, plaintiff was in need of immediate medical care, and that defendant was deliberately indifferent in failing to obtain such medical care. Plaintiff has not done so.

Rather, it appears plaintiff has a difference of opinion with defendant: plaintiff believes he should have received medical services at the time of the incident; defendant did not observe an emergent need for medical services at the scene. Defendant's position is supported by the LVN's subsequent determination that plaintiff required no emergent care, even after the incident, advising plaintiff to put in a sick call request to see the doctor.

Plaintiff also failed to adduce competent medical evidence that he incurred significant harm or further injury by any delay in receiving medical care. As argued by defendant, plaintiff

---

[8] Plaintiff Schmidt, a double amputee, brought an action under the Americans with Disabilities Act, claiming jail officials failed to accommodate his needs, including not providing a shower chair for six or seven months and therefore could only access the shower by crawling and sitting on the floor or by standing, with great pain, on his residual legs. The court denied summary judgment, finding "a genuine issue of fact as to whether the defendants failed to make reasonable accommodation for [Schmidt's] disability, including by failing to timely transfer him to an appropriate facility and failing to timely provide a shower chair." Schmidt, 64 F.Supp.2d at 1032-33.

[9] Section 845.6 provides that "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care." Id.

1  focused on the pain he felt after the fall, but adduced no evidence demonstrating that the delay
2  caused plaintiff additional harm or worsened his condition.  Rather, at the time of his medical
3  evaluation by the LVN, plaintiff reiterated his complaints of back and knee pain.  Plaintiff
4  provided medical records that reflect plaintiff was later seen by a doctor, and was provided x-rays
5  of his right femur and lumbar spine on November 24, 2017.  (ECF No. 29 at 96-97.)  While the
6  undersigned does not minimize the pain plaintiff felt after his fall in the transport van and later,
7  plaintiff has identified no significant injury or harm incurred from the delay.

8      At bottom, the undisputed evidence demonstrates that defendant briefly delayed getting
9  plaintiff medical care on one occasion.  Indeed, in his opposition, plaintiff now concedes that
10  defendant pushed plaintiff into the medical clinic only about thirty to forty minutes after the
11  incident.  (ECF No. 29 at 12, 31.)  No reasonable juror would find that such delay, absent
12  evidence of further significant harm or injury, rises to the level of deliberate indifference.  At
13  most, such brief delay constitutes an isolated incident of negligence on the part of defendant.
14  Such delay does not establish an Eighth Amendment violation due to deliberate indifference of a
15  serious medical need.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989) (stating that
16  generally, "delay in providing a prisoner" with medical care, "standing alone, does not constitute
17  an eighth amendment violation.") (citation omitted).  "[I]solated occurrences of neglect," as well
18  as "mere malpractice, or even gross negligence," may be inexcusable, but they do not amount to
19  deliberate indifference.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (citation
20  omitted).

21      Plaintiff's attempt to establish a triable issue of fact based on the LVN's alleged failure to
22  thoroughly evaluate plaintiff's medical condition or the LVN's alleged falsifying of plaintiff's
23  injuries (ECF No. 29-1 at 6) also fails.  Simply because defendant Thung was present at the time
24  of the LVN's evaluation does not establish a link or connection to the LVN's actions or omissions
25  in medically evaluating plaintiff.  Moreover, as argued by defendant, because he is not a medical
26  provider and has not had medical training, defendant could reasonably rely on the LVN's
27  evaluation.  See Lemire v. California Dep't of Corr. & Rehab., 726 F.3d 1062, 1084 (9th Cir.
28  2013) (custody staff entitled to summary judgment because "they reasonably relied on the

expertise of the prison's medical staff.") Finally, plaintiff also complains that he was wheeled into the E-clinic inmate bathroom rather than a medical exam room, but where the LVN performed her evaluation of plaintiff's injuries is not relevant to the claim concerning defendant Thung's alleged delay in obtaining such medical evaluation.

For all of the above reasons, the undersigned finds that defendant Thung is entitled to summary judgment.

VI. Qualified Immunity

Defendant also contends that he is entitled to qualified immunity.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a two-pronged test to determine whether qualified immunity exists. First, the court asks: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. If "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Id. To be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (internal quotation marks and citation omitted). Accordingly, for the purposes of the second prong, the dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. Courts have the discretion to decide which prong to address first, in light of the particular circumstances of each case. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As discussed above, the undersigned finds that defendant did not violate plaintiff's Eighth Amendment rights. For this reason, the undersigned need not further address qualified immunity.

VII. Exhaustion of Administrative Remedies

A. Legal Standards

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). In other words, prisoners are

14

required to exhaust the available remedies prior to filing "any action." Ross v. Blake, 136 S. Ct. 1850, 1857 (2016) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006); Jones v. Bock, 549 U.S. 199, 211 (2007)).

Exhaustion is mandatory regardless of the relief sought by the prisoner and regardless of the relief offered by the process, unless "the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint." Booth v. Churner, 532 U.S. 731, 736, 741 (2001). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1859 (quoting Booth, 532 U.S. 731, 738 (2001)).

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 136 S. Ct. at 1859. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59).

In addition, the Ninth Circuit has held that a prison's failure to follow its own procedures creates an exception to the exhaustion requirement. Sapp v. Kimbrell, 623 F.3d 813, 823 (9th Cir. 2010). In order to "fall within this exception," a prisoner "must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." Id., 623 F.3d at 823-24.

B. California's Inmate Appeals Process

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S.

at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. California regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The appeal process is initiated by the inmate's filing a "Form 602" the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id. § 3084.2(a). The level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a)(3-4).

"The California prison grievance system has three levels of review: an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

If an inmate's administrative appeal is rejected, the inmate must be given clear instructions on how to cure the appeal's defects. Cal. Code Regs. tit. 15, §§ 3084.5(b)(3), 3084.6(a)(1). A cancellation or rejection decision does not exhaust administrative remedies. Cal. Code Regs. tit. 15 § 3084.1(b). Additionally, administrative remedies are not considered exhausted as to "any new issue, information, or person later named" by the inmate that was not included in the originally submitted CDCR 602 inmate appeal form. Cal. Code Regs., tit. 15, § 3084.1(b).

////

////

C. Discussion

1. Grievance CHCF 17-04367

a. No Third Level Review Received

It is undisputed that (a) CDCR generally has a grievance process that plaintiff used to exhaust grievance CHCF 17-04367 through the first two levels of review;[10] (b) plaintiff did not receive a third level review on the merits of grievance CHCF 17-04367; and (c) plaintiff received a rejection letter for grievance CHCF 17-04367, dated September 7, 2018, from the third level. Defendant has met his burden to show that plaintiff failed to obtain a third level review of grievance CHCF 17-04367.

b. Rejected Grievance

As discussed above, the Ninth Circuit has recognized an exception to the exhaustion requirement when a prisoner's attempts to exhaust his administrative remedies are "thwarted by improper screening." Sapp, 623 F.3d at 823. To meet this exception, the prisoner must show (1) that he actually filed a grievance which would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance for reasons inconsistent with or unsupported by applicable regulations. See id. at 823-24.

Here, plaintiff's grievance was properly rejected because plaintiff failed to attach supporting documents. Because plaintiff's grievance was properly rejected, he was not "thwarted by improper screening." See Sapp, 623 F.3d at 823; see, e.g., Hampton v. Virga, 2019 WL 4596606, at *7 (E.D. Cal. Sept. 23, 2019) (finding plaintiff was not excepted from exhaustion requirement when his grievances were properly rejected at first level and he did not resubmit them), adopted by 2019 WL 6009523 (E.D. Cal. Nov. 14, 2019). Moreover, the rejection did not operate as a "dead end." Ross, 136 S. Ct. at 1859. Plaintiff had a remedy: he could have resubmitted the grievance. The single rejection of the grievance did not render the administrative process unavailable to him.

////

---

[10] The record also reflects that in three prior, unrelated grievances, plaintiff received third level decisions from the OOA. (ECF No. 24-6 at 6.)

Plaintiff disputes that he did not resubmit his appeal. (ECF No. 29-2 at 10.) Plaintiff declares that he "resubmitted the documents that were allegedly missing." (ECF No. 29 -2 at 10.) In his opposition, he simply reiterates his claim that he resubmitted all documents, but received no response and "heard nothing back." (ECF No. 29 at 19-20; 22-23; 23-24.) Defendant objects that plaintiff's statement that he "resubmitted the documents" is vague, and plaintiff provided "no facts or evidence as to the date he allegedly resent it or the method he used, as he did for his detailed recitation of the dates he sent his grievance for first and second level review." (ECF No. 31 at 5.) Defendant's objections are well-taken.

In any event, plaintiff's unsupported claim that he "resubmitted the "documents" does not present a material dispute of fact because his statement, without more, does not demonstrate that the grievance process was rendered unavailable. Plaintiff adduced no competent evidence that prison staff thwarted or interfered with plaintiff's ability to exhaust his administrative remedies.

Because grievance CHCF 17-04367 was properly rejected, defendant's motion for summary judgment on exhaustion grounds should be granted.

### 2. Remaining Appeals

As set forth above, it is undisputed that the remaining administrative grievances, all health care appeals, do not identify defendant Thung and do not include plaintiff's claims that defendant Thung denied or delayed plaintiff medical care. (UDF 23-25.) Plaintiff objects that he did not include his claims against defendant Thung in these appeals because he "was advised not to mix custody with medical issues and medical with custody." (ECF No. 29-2 at 11.) In support, plaintiff points to the rejection notice issued in CHCF HC 17000845. However, grievance CHCF HC 17000845 requested a copy of the incident report from the November 22, 2017 incident, and did not raise plaintiff's allegations concerning Thung. (ECF No. 24-4 at 41.) In addition, the rejection notice for grievance CHCF HC 17000845 also stated that plaintiff could explain why this issue is within the health care jurisdiction. (ECF No. 29 at 48 (Pl.'s Ex. A-4).) Finally, plaintiff points to no other (non-health care) grievance in which he claimed that defendant Thung refused or delayed medical care to plaintiff on November 22, 2017. On this record, the court cannot find that plaintiff's health care appeals exhausted his claims against defendant Thung.

VIII.  Conclusion

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign a district judge to this case.

Further, IT IS RECOMMENDED that:

1. Defendant Thung's motion for summary judgment (ECF No. 24) be granted; and

2. This action be terminated.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty** days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within **fourteen** days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 27, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/mame1082.msj